HOWARD J. DeMELLO, Plaintiff, *v.* FIRST INSURANCE COMPANY of HAWAII, LTD., Defendant.

NO. 5437

JUNE 12, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA, JJ., and CIRCUIT JUDGE VITOUSEK ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

Howard J. DeMello (hereinafter plaintiff or plaintiff-insured) and First Insurance Company of Hawaii (hereinafter

defendant or defendant-insurer) submitted this case for our decision under the provisions of the former ch. 631 of H.R.S., which provided that this Court could hear and determine a claim for relief presented on an Agreed Statement of Facts.[1] From the submitted Agreed Statement of Facts we extract the following sequence of legally significant events.

Late on the evening of August 18, 1971, plaintiff was operating his pickup truck in Honolulu, on Kalanianaole Highway about one-half mile ewa (west) of the intersection of Kalanianaole Highway and Ehukai Street. At this particular location, Kalanianaole Highway is a two-lane road; plaintiff was in his ewa-bound lane. The other lane was for traffic proceeding in the opposite direction (Makapuu or east bound). Suddenly, plaintiff noticed the headlights of an on-coming, Makapuu-bound vehicle approaching his pickup truck. According to the stipulated facts, the on-coming Makapuu-bound vehicle was in the ewa-bound lane of travel. To avoid an apparently imminent head-on collision; plaintiff swerved his vehicle to the right and collided with the mountainside off the right shoulder of the highway. The operator of the approaching vehicle that had been driven in the improper lane drove on without stopping and has never been identified.

It is further stipulated and agreed that: (1) plaintiff suffered severe injuries as a result of his collision with the mountainside; (2) this collision and its resultant injuries were proximately caused by the negligence of the still unknown operator of the on-coming vehicle; (3) there was no physical contact between plaintiff's vehicle and the unidentified on-coming vehicle. It is also agreed that plaintiff had in force at the time of the accident a valid automobile liability insurance policy with defendant-insurer that provided that defendant-insurer would pay damages caused by an uninsured motorist. The particular provision under which plaintiff-insured claims

---

[1] Ch. 631 of H.R.S. has been repealed in its entirety, SLH 1972, Act 89, § 7; effective July 1, 1973, SLH 1972, Act 89, § 11. This case was submitted to us for decision March 2, 1973. We have jurisdiction and power to entertain and dispose of this cause under HRS § 602-5(3) as amended by SLH 1972, Act 88, § 2, effective July 1, 1973, and under our Rule 21.

coverage is the "hit-and-run" paragraph, which paragraph specifically includes coverage for any "bodily injury to an insured arising out of physical contact" of insured's motor vehicle and any motor vehicle operated by a negligent "hit-and-run" driver, so long as the identity of the "hit-and-run" driver cannot be ascertained.[2] Plaintiff and defendant agree that all the prerequisites for recovery under the policy provisions have been complied with, save and except for the fact that there was no physical contact between plaintiff-insured's vehicle and the vehicle operated by the still unidentified other driver.

Before turning to the narrow legal issue involved herein, *infra,* the issue raised by the dissenting opinion merits brief discussion. We cannot agree with the view, expressed by the dissent, that we have invalidly assumed the applicability herein of HRS § 431-448 by invalidly assuming that accidents involving unidentified motor vehicle operators and insured drivers are intended by HRS § 431-448 to be covered in all automobile liability insurance policies issued in this state. Nor can we agree with the view expressed in the dissent that

---

[2] The relevant policy provisions are:

*PROTECTION AGAINST UNINSURED MOTORIST'S COVERAGE:*

the company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; . . . .

" "Uninsured highway vehicle" " means:

. . . .

(b) A hit-and-run vehicle;

" *"Hit-and-run vehicle"* " means a highway vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such vehicle; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer of the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts and support thereof; and (c) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident.

the terms of HRS § 431-448 are clear and unambiguous as applied in this case.[3]

The dissenting opinion proceeds on the logically unsound basis that an *unidentified* driver is not, and cannot be, an *uninsured* driver, and hence the statute does not apply. However, it seems clear to us that unidentified drivers can either be (a) insured or (b) uninsured. Unless we make some completely unsupportable and unwarranted factual assumption about whether or not the unidentified driver is or is not insured, we cannot know from the bare terms of the uninsured motorists statute whether or not an automobile accident involving an *unidentified* driver is or is not intended to be covered by that statute. We have no factual basis on which to make such determination, and factual determinations are inappropriate activities for an appellate court, in any event. Whereas the dissenting opinion, perhaps unconsciously, makes a factual assumption that the unknown driver, by virtue of being unknown, cannot also be uninsured, we prefer to have recourse to the legislative history of HRS § 431-448 for assistance in determining how the term "uninsured" in the statute is to be read in cases such as that here at bar. The legislature history of this statute, set out in pertinent part, *infra*, fn. 4, is not only clearly indicative of a legislative intention to assure, via HRS § 431-448, proper compensation for those tragically injured in automobile accidents, but in fact, *expressly, clearly,* and *without ambiguity,* states a legislative intention to assure that insurance companies provide coverage for persons injured in accidents and who have, as here, a valid claim that is uncollectible because of the fact that the tortfeasor operating the second vehicle involved in

---

[3] HRS § 431-448 provides in pertinent part as follows:

§ 431-448 Automobile liability; coverage for damage by uninsured motor vehicle. No automobile liability or motor vehicle liability policy . . . shall be delivered, issued for delivery, or renewed in this State . . . unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.

the accident *cannot be identified*. In sum, whereas the dissenting opinion apparently takes the illogical and unfounded view that because "unidentified" and "uninsured" are different adjectives (albeit not mutually exclusive conceptually), there is a presumption in favor of the unknown tortfeasor's insurance coverage, we think that only the opposite presumption can be reconciled with the clear and unambiguous statement of the legislative intent to provide to insureds adequate protection in instances such as that now before us.

The more narrow and complex legal issue presented for our decision is whether plaintiff-insured can recover under his particular insurance policy with defendant-insurer when, as here, the "physical contact requirement"[^] in the policy language is not complied with. Plaintiff-insured urges that the precondition of physical contact is null and void under HRS § 431-448.

We have recently decided a somewhat similar issue. In *Walton v. State Farm Mutual Automobile Insurance Company*, 55 Haw. 326, 518 P.2d 1399 (1974), we held that in order to accomplish the protective purpose of HRS § 431-448,[4] an "other insurance" clause in the uninsured motorists provisions of an insured's automobile liability policy is invalid if its effect is to limit recovery by the insured under the particular

---

[4] Standing Committee Report 194 on H.B. 26 (which became HRS § 431-448), 1965 House Journal, page 582, states in part:

The purpose of this bill is to *promote protection*, through voluntary insurance, for persons who are injured by uninsured motorists who cannot pay for personal injuries caused by motor vehicle accidents. . . .

An insurance company offering uninsured motorist protection engages to pay to the insured, . . . sums not to exceed the stated limits, for any uncollectible valid claims or unsatisfied judgment for damages resulting from bodily injury or death, resulting from the . . . use of an automobile. *The claim becomes payable when the innocent victim shows that his claim is valid*, that is, that there is legal liability on the person alleged to be responsible *and that the claim cannot be collected* because of the financial irresponsibility of that person or *because of the inability to identify the person or persons responsible*.

In testimony on this bill, instances have been cited where persons have suffered extensive personal injuries and property damages and found that the guilty motorist was financially irresponsible and without any liability insurance. *Your Committee believes that if the general public knows about the availability of such insurance, and if the insurance companies are compelled to offer it, many of these tragic circumstances can be avoided.* (Emphasis supplied.)

policy to an amount that is less than the statutory minimum set up by HRS § 287-7, if that limit also results in insured's total recovery from all sources equalling less than the insured's actual damage. Similarly, we here hold invalid — as contrary to the protective purpose of HRS § 431-448 — the "physical contact" requirement in the uninsured motorists coverage of insured's automobile policy.

As in *Walton*, we are confronted at the outset with a split in authority.[5] However, a detailed study of the case authority in this field is only minimally helpful, because we are here required to construe a Hawaii *statute*, as to which the law in other jurisdictions can be advisory only.

In considering whether the contractually imposed policy requirement of physical impact should be null and void as in contravention of the statutory policy requirement evident in HRS § 431-448, we may analyze the problem by endeavoring to discover (1) what arguably valid objective this arbitrary

---

[5] In interpreting the Florida uninsured motorist statute, it was held that no contractual physical contact requirement could be permitted to stand so as to defeat recovery in a factual situation similar to that here involved. *Brown v. Progressive Mutual Insurance Company*, 249 So.2d 429 (Fla. 1971). The special legislative purpose of the uninsured motorist statute required this result. Fla. Stats. § 627.0851, F.S.A. *Compare, Brown v. Progressive Mutual Insurance Company*, supra, with *Gilliam v. Stewart*, 291 So. 2d 593 (Fla. Sup. Ct., 1974), in which the Florida court retained the rule that an essential element in a valid claim for negligently caused emotional stress was proof of actual physical impact. There was no relevant statute in *Gilliam* similar to the uninsured motorist statute in *Brown*.

Prior to the amendment of Cal. Ins. Code § 11580.2 by legislative addition of a "physical contact" requirement, Stats. 1961, ch. 1189, the California statute, like the Hawaii statute, was silent as to the necessity for physical impact. Regardless of physical contact, it was decided that insurer had a duty to pay the claim where an otherwise valid claim for recovery could be made under such pre-amendment statute. *Costa v. St. Paul Fire and Marine Insurance Company*, 228 Cal. App. 2d 651, 39 Cal. Rptr. 774 (1964) (by implication).

Although Virginia procedures are different from ours as to the methods for assertion of claims for damage from "uninsured motorists," the law in Virginia is that the physical impact requirement is null and void under the Virginia Uninsured Motorists Law. *Doe v. Brown*, 203 Va. 508, 516, 125 S.E.2d 159, 165 (1962).

On the other hand, there are cases that have upheld a contractually imposed physical impact requirement in an insurance policy definition of "hit-and-run" driver, as consistent with the state statute on uninsured motorist protection. *Buckeye Union Ins. Co. v. Cooperman*, 33 Ohio App. 2d 152, 293 N.E.2d 293 (1972). For other cases in accord with *Buckeye, see generally,* Annotation: Uninsured Motorist Indorsement: Validity and Construction of Requirement that there be 'Physical Contact' with Unidentified or Hit-and-Run Vehicle," 25 A.L.R.3d 1299, 1306-07.

physical impact requirement is designed to serve, (2) whether this objective is compatible with the statute, and (3) if so, whether (a) the objective is actually served by the requirement, and, (b) whether there are countervailing objections to the requirement that will nonetheless invalidate it as inconsistent with the statutory purpose.

The first two steps in the analysis are relatively easy. The physical impact requirement can only be designed to reduce the number of claims that may be filed by insureds with insurers, by elimination of some claims which are fraudulent. *Brown v. Progressive Mutual Insurance Company*, 249 So.2d 429, 430 (Fla. 1971); *Inter-Insurance Exchange of the Auto. Club of Southern California v. Lopez*, 238 Cal. App. 2d 441, 446, 47 Cal. Rptr. 834, 837 (1965). "The object is to eliminate fictitious claims of a driver who, through his own negligence, causes injury to himself without the involvement of another vehicle, and then seeks recovery on the ground that it was due to a fictitious hit-and-run driver." *State Farm Mutual Automobile Insurance Company v. Spinola*, 374 F.2d 873, 875 (5th Cir. 1967). The elimination of fraudulent claims is obviously not repugnant to the statutory terms of HRS § 431-448 or to the policies reflected in the provision's legislative history.

Conceding that the physical impact requirement is designed to eliminate fraudulent claims and that such elimination is not contrary to the statute, we are next faced with the third analytical step of evaluating whether this proper and even laudable objective is actually served by the physical impact requirement, especially in light of any countervailing objections to the requirement. Since, in the case at bar, and according to the Agreed Statement of Facts, the claim of plaintiff-insured is a *valid and non-fraudulent claim,* it is evident that it would be contrary to the statutory policy and legislative intent of HRS § 431-448[6] to permit the physical impact requirement to bar *this* plaintiff-insured's valid claim against this defendant-insurer. Although this case might be easily decided on these grounds, defendant-insurer seeks a broader ruling from this court.

---

[6] See the legislative history set out in fn. 4 especially paragraph two thereof.

This court has held that the fear of a flood of fraudulent claims cannot justify the judicial deprivation of a plaintiff's right to bring an independent action in tort, because the genuineness of the claim can be adequately tested by the mechanisms of our adversary process. *Rodrigues v. State*, 52 Haw. 156, 169-176, 472 P.2d 509, 518-22 (1970). In the case at bar, as in *Rodrigues,* it is not to be forgotten that *plaintiff carries the burden of proof.* We have only very recently held that the weight of plaintiff's burden of proof provides fully adequate protection against any "flood" of fraudulent claims for the negligent infliction of emotional distress, and that the judicial imposition of a physical impact requirement cannot be permitted and should be eliminated in this state as an arbitrary, irrelevant, and often unjust barrier to the recovery by plaintiff of damages for actual mental distress negligently inflicted by others. *Leong v. Takasaki,* 55 Haw. 398, 520 P.2d 758 (1974). Similarly we here hold that the physical impact requirement cannot be used by defendant-insurer to defeat an insured's otherwise valid claim. For us to enforce insurer's physical impact contractual prerequisite would, in effect, amount to our propping up of an arbitrary barricade erected to eliminate all claims for damages resulting from one car accidents. Since it is clear that one car accidents can be caused by the negligent operation of a second "uninsured" vehicle (as here) any contractual prerequisite of physical contact between automobiles undermines the statutory purposes of HRS § 431-448.[7]

It has been repeatedly, if tacitly, recognized by many courts that the physical impact requirement can, if strictly enforced, defeat valid claims. To prevent this result, and yet "uphold" the impact requirement, courts have been compelled to engage in what may euphemistically be termed unbelievably creative thinking. For example, in *Johnson v. State Farm Mut. Auto. Ins.,* 70 Wash. 2d 587, 424 P.2d 648 (1967), the court held that, under language in pertinent part

---

[7] Note italicized portions of the legislative history set out in fn. 4.

substantively identical to that here involved,[8] there was "physical contact" when an unknown vehicle struck a second vehicle, which in turn struck insured's vehicle; the court held that this strained interpretation of "physical contact" was consistent with the uninsured motorists statute.[9] Other courts have gone yet further. In *Barfield v. Insurance Company of North America*, 59 Tenn. App. 631, 443 S.W.2d 482 (1968), the court held that a "physical contact" requirement was satisfied when the rear wheels of an unidentified vehicle propelled a rock through a claimant's windshield causing him severe injury.[10] In *American Insurance Company v. Gernand*, 262 Cal. App. 2d 300, 68 Cal. Rptr. 810 (1968), the court found an arbitrable issue as to whether defendant-insured Alice Gernand could collect under her uninsured motorists indorsement requiring physical contact when Mrs. Gernand and another were injured in an accident caused by an unidentified driver's negligent operation of a vehicle, which operation resulted in a third vehicle's swerving to avoid collision with the unidentified party's automobile. This third vehicle's swerve caused defendant-insured, as operator of her vehicle, to swerve to avoid collision. None of the vehicles touched any of the other vehicles, yet this factor could not alone defeat

---

[8] The insured's policy provided the following as a definition of a "hit-and-run" automobile (for purposes of uninsured motorists protection):

[A]n automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident . . . .

70 Wash. 2d at 589, 424 P.2d at 649.
Compare with the policy language involved in the case at bar, fn. 2, following the words " 'Hit-and-run vehicle' " means . . . .

[9] *Accord, Latham v. Mountain States Mutual Casualty*, 482 S.W.2d 655 (Tex. Civ. App. 1972); *State Farm Mutual Automobile Insurance Co. v. Spinola*, 374 F.2d 873 (5th Cir. 1967); *Lord v. Auto-Owners Insurance Company*, 22 Mich. App. 669, 177 N.W. 2d 653 (1970); *Inter-Insurance Exchange of the Automobile Club of Southern California v. Lopez*, 238 Cal. App. 2d 441, 47 Cal. Rptr. 834 (1965). As in *Johnson v. State Farm Mut. Auto. Ins., supra*, relevant policy language in all these cases was substantively identical with the policy language in the case at bar.

[10] *Cf., Gavin v. M. V. A. I. C.*, 57 Misc. 2d 335, 292 N.Y.S. 2d 745 (1968) (a similar interpretation given to phrase "physical contact" in New York Insurance Law §617, a statutory provision.)

insured's claim, the "physical contact" requirement notwithstanding.[11]

The preceding cases indicate a trend toward the erosion of the validity of a contractually imposed impact requirement. This factor should be considered in connection with the obvious correlative truth that this arbitrary requirement will defeat some clearly valid claims unless stretched conceptually to points of incredulity far beyond that done in the preceding cases.[12]

In light of these considerations we do not think we should adopt a rule validating the impact requirement if to do so will either defeat valid claims initially (by strict construction), or compel many claimants to take on the expense of litigating the meaning of "physical contact" (if a liberal approach prevails). Since we feel that, at a minimum, a liberal approach to the definition of physical contact requirement would be required by the statute, and since the presence of physical contact will often be a collateral or irrelevant issue to the establishment of a valid claim based on the negligence of the unidentified driver, and, finally, since considerable sophistry must, perforce, be used by courts to decide what amounts to "physical contact" in any one case in order to sustain a valid claim (given a liberal definition of the provision) we think it is required to hold the physical impact prerequisite provision void under the statute. To hold otherwise would dilute the protection intended to be offered by HRS § 431-448 to insureds, by making it unnecessarily difficult and expensive for an injured insured to prove his claim's validity.

---

[11] We acknowledge that in other cases a contractually imposed physical impact requirement has been strictly construed, *e.g.*, *Cruger v. Allstate Ins. Co.*, 162 So. 2d 690 (Fla. App. 1964); *Ely v. State Farm Mutual Auto. Ins. Co.*, 148 Ind. App. 586, 268 N.E.2d 316 (1971); *Blankenbaker v. Great Cent. Ins. Co.*, Ind. App., 281 N.E.2d 496 (1972); *Aetna Casualty & Surety Co. v. Head*, 240 So. 2d 280 (Miss. 1970); *Collins v. New Orleans Public Service, Inc.*, 234 So. 2d 270 (La. App. 1970), *writ refused*, 256 La. 375, 236 So. 2d 503 (1970).

[12] For example, one California arbitrator decided that a "physical contact" requirement was satisfied when *only* oncoming headlight beams "struck" insured's vehicle prior to an accident! A. I. Widiss, *A Guide to Uninsured Motorist Coverage*, § 2.41, pp. 84-5, fn. 194 (1969).

We also note the clear possibility of instances in which the contractually imposed requirement will not fulfill its justifiable objective of eliminating fraudulent claims. A claimant with a fraudulent claim can bolster the same, if necessary, by damaging his own car to leave apparent proof of the requisite "physical contact" with a non-existent "unidentified vehicle." The contractual "physical impact" requirement thus not only sweeps too broadly, but also not broadly enough, to accomplish its only justifiable and statutorily permissible purpose, the prevention of frauds.

Because insurer's contractual requirement of physical impact unjustifiably impedes effectuation of the statutory policy of protection for insureds against damage from the negligence of unidentified drivers, as elaborated in our analysis, *supra*, [13] it cannot stand. Accordingly, judgment will be entered for plaintiff-insured.

*Christopher P. McKenzie (Gould & McKenzie* of counsel) for plaintiff.

*Walter Davis* for defendant.

### DISSENTING OPINION OF KOBAYASHI, J., AND CIRCUIT JUDGE VITOUSEK

We dissent.

The basic fallacy of the opinion of the majority is that it goes on the assumption that unidentified, "hit and run" owners or operators of motor vehicles fall within the provisions of HRS § 431-448.

In addition, the opinion of the majority violates a fundamental rule of statutory construction. Though the language of the statute is plain, clear, and unambiguous, the majority concludes ambiguity exists and for support of its conclusion utilizes a legislative committee report for "clarification" as to legislative intent.

Then the majority of the court plunges into a justification of why a "physical contact" is not necessary in a "hit and

---

[13] For other criticism of the impact requirement, *see e.g.*, *Widiss*, *supra*, § 2.41, p. 86; Chadwick and Poche, *California's Uninsured Motorist Statute: Scope and Problems*, 13 Hast. L.J., 194, 197-98 (1961).

run'' situation.

The opinion of the majority would be plausible if the opinion had addressed itself initially to the threshold questions, resolved same, and then dealt with the dispensation of ''physical contact'' in a ''hit and run'' case. However, we are of the opinion that if the majority had dealt with the basic threshold questions involved herein, the majority would have concluded that the defendant insurance company was not compelled to issue a coverage for ''hit and run'' or unidentified owners or operators of motor vehicles under the terms of HRS § 431-448, and that said coverage was strictly a voluntary agreement between plaintiff-insured and defendant insurance company. And in that context this court would then resolve the issue of whether the defendant insurance company could or could not impose the requirement of ''physical contact'' in a ''hit and run'' coverage.

In our opinion the terms of HRS § 431-448 are clear and unambiguous and need no construction as to their meaning. The provisions therein state clearly ''to recover damages from owners or operators of *uninsured* motor vehicles . . . .'' (Emphasis added.) *Twentieth Century Furniture, Inc. v. Labor and Industrial Relations Appeal Board,* 52 Haw. 577, 482 P.2d 151 (1971); *Helvering v. City Bank Company,* 296 U.S. 85, 89 (1935). The law does not require the defendant insurance company to provide ''hit and run'' or unidentified vehicle insurance coverage, and where the public policy does not forbid the imposition of a requirement of ''physical contact'' in a ''hit and run'' insurance coverage, both the plaintiff-insured and the defendant insurance company are bound by their voluntarily entered into agreement.[1] Accordingly, we would enter judgment in favor of defendant insurance company.

---

[1] *Accord,* Amidzich v. Charter Oak Fire Insurance Co., 44 Wis. 2d 45, 170 N.W. 2d 813 (1969).